WILLIAM MILLARD, *et al. v.* MONT STEPP, *et al.*

(No. 8886)

Submitted September 26, 1939. Decided November 28, 1939.

*McKinley Trent, J. W. Copley* and *H. W. Hill,* for appellants.

*James M. Jordan* and *Bronson & Greene,* for appellee.

MAXWELL, JUDGE:

In this chancery cause the plaintiffs are William Millard and his seven children. The defendants are Mont Stepp, Virginia Stepp, Esther Musick and Adrian J. Stepp.

By their bill, the plaintiffs seek of the principal defendant, Mont Stepp, an accounting of their alleged share of certain rents which he has collected for the benefit of himself and the other defendants, surface owners, from certain mining camp houses.

The plaintiffs appeal from the trial court's decree in favor of the defendants and dismissing the bill out of court.

Both groups claim under Thomas Stepp, Sr., who died intestate January 17, 1900, seized in fee and possessed of a tract of one thousand acres of land in Mingo County. He was survived by his widow, Charlotte, and thirteen children. Later in the year 1900, Esther, one of the daughters, died intestate, unmarried and without issue. Her undivided one-thirteenth interest in her father's estate then passed by descent to her mother and brothers and sisters in the proportion of one-thirteenth to each.

In 1903, the widow and heirs of Thomas Stepp, Sr., deceased, executed to A. Goodman and L. A. Sampselle, a fifty-year-term coal lease on the above mentioned prop-

erty, which instrument specified that, for the purpose of building houses, storehouses, barns, tipples, and for coal mining purposes, the lessees were to have the right to use four described parcels of surface, the aggregate whereof is variously estimated in the record from seven to twelve acres. The miners' houses now in dispute were erected on these small parcels by the lessees.

Through the years, since the death of Thomas Stepp, Sr., different heirs have made conveyances affecting their inheritances. Some of these conveyances affect only the surface, others the minerals. Particularization of these matters is not here necessary.

From the stipulation appearing in the record, entered into between the parties to this suit for purposes thereof, it appears that in March, 1915, those of the Thomas Stepp, Sr., heirs who, through inheritance and purchase, had come into full ownership of the surface, partitioned the surface among themselves by an exchange of deeds, excepting the four lots or parcels, hereinabove mentioned, being the same that were described in the coal lease of 1903.

Operation under the coal lease, with incident occupation and use of the four parcels, continued until 1932, when Standard-Thacker Coal Company, a corporation, which through mesne assignments had come into ownership of the lease and was operating thereunder, became bankrupt. The lease and its appurtenances were then sold in bankruptcy court, and the purchaser thereof was A. R. Stepp, attorney in fact for the then owners of the minerals and mineral rights in the Thomas Stepp, Sr., one thousand acres of land hereinabove mentioned. The price was $2,000.00, and that amount was paid by crediting the same against $11,000.00 royalty owed by the bankrupt to the owners of the coal.

The coal lease contains a clause which reads: "In case the lessee shall fail to comply with the provisions of this lease as to the payment of royalties or as to the development of said property then this lease shall become forfeited and utterly void." Though this provision is not self-

executing, the affirmative action of the mineral owners in buying the leasehold estate at the bankruptcy sale constituted most emphatic action on their part to terminate the lease. Following this reinvestiture in the mineral owners of the leasehold rights which formerly they had demised to others, the coal owners stood again in unqualified seizure thereof. As to the four lots of surface with the miners' houses thereon, the purchasers at the bankruptcy sale acquired only the lessees' right of user under the lease, so long as it remained in force. But the lease abruptly came to an end, so that the right of user of the four parcels, as contemplated by the lease, terminated coincidently. These parcels, therefore, no longer thereafter remained subject to the easement created by the coal lease. So far as that instrument is concerned the fee simple title to the small parcels reposes in the owners thereof without shadow. Consequently, the resultant query: Where is the title in fee? The answer, obviously, is that it rests where it was cast by descent in the year 1900, upon the death of the ancestor, Thomas Stepp, Sr., save only as the same may have been affected by conveyances executed since that date.

Wherefore, we reach the conclusion, in conformity with the trial chancellor's finding on that point, that the persons who have only mineral interests in the Thomas Stepp, Sr., one thousand acres of land have no interest in the four lots as such. The mineral owners' only surface rights are such as may be incident and necessary to the mining and removal of the minerals, if and when further development thereof is undertaken.

But there is another angle to this complication. Though the plaintiffs, as mineral owners, cannot maintain this suit, they must be accorded recognition as the owners of a fractional part of the surface. The interest arises in this manner: The undivided one-thirteenth which Thomas Stepp, Senior's, widow, Charlotte, inherited in June, 1900, from her deceased daughter, Esther, was never aliened by Charlotte. She made with her children satisfactory arrangements respecting her dower, and waived the formal

assignment to her of a parcel of land under her right of dower, but she never executed a deed or other instrument disposing of the one-thirteenth in fee which she inherited from Esther. By no affirmative act did Charlotte divest herself of title, nor did any action of hers mislead others to their prejudice. The fact that she did not assert ownership of the one-thirteenth interest does not operate to deprive her of her title thereto. In such circumstances, estoppel does not arise. 16 Am. Jur., p. 921; 18 Corpus Juris, p. 867.

On the death of Charlotte in 1922, there passed to her heirs by descent the one-thirteenth interest which she had inherited from Esther. One of those heirs was Columbia Stepp Millard, wife of plaintiff, William Millard, and the mother of the other plaintiffs. As claimed by the plaintiffs, at the death of Columbia in 1933, there descended unto her children her one-eleventh of Charlotte's one-thirteenth of Esther's inheritance of one-thirteenth of the four small parcels hereinabove discussed, subject to the curtesy estate of Columbia's surviving husband, William Millard, plaintiff.

Wherefore, we are of opinion that the trial court erred in holding that the plaintiffs have no interests in the surface.

It follows that the decree dismissing the plaintiffs' bill must be reversed and the cause remanded for further proceedings not out of accord herewith.

*Reversed and remanded.*